IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Luis Álvarez-Cabrera, et al. **Plaintiffs,** v. Toyota Motor Sales, U.S.A., Inc. and Toyota Motor Corporation **Defendants.** | CIVIL NO. 17-2305 (RAM) |

## OPINION AND ORDER

Raúl M. Arias-Marxuach, United States District Judge

This matter comes before the Court on Defendants Toyota Motor Sales, U.S.A., Inc. and Toyota Motor Corporation's (collectively, "Toyota" or "Defendants") *Motion for Summary Judgment* (Docket No. 129). Having considered the parties' submissions in support and in opposition to the motion (Dockets Nos. 133-138), the Court **GRANTS** Defendants' *Motion for Summary Judgment*. (Docket No. 129). Judgment of dismissal **with prejudice** shall be entered accordingly.

## I.   BACKGROUND

This case arises from an automobile accident which took place on May 27, 2010 at around 12:55 am. (Docket No. 1 at 10). According to the *Complaint*, Plaintiff Tatiana Álvarez-Pérez ("Álvarez-Pérez") was driving a 2004 Toyota Sequoia going north on PR Road

# 176, when the vehicle "**suddenly and unexpectedly and unintentionally accelerated**" reaching high speeds at which she lost control, crashed against several objects and eventually crashed against a cement electric power post. Id. ¶ 32. Ms. Álvarez-Pérez "received a heavy blow and multiple traumas to the head, causing her to lose consciousness, and her body to remain crushed and jammed within the car." Id. ¶¶ 33. She was comatose for a prolonged period due to brain trauma, underwent multiple surgeries, is partially physically impaired, and has suffered mental, psychological, moral and emotional distress. Id. ¶¶ 162-163, 170-171. Ms. Álvarez-Pérez has no recollection of the accident. (Docket No. 129-3 at 3, 19). The only person who witnessed it was Marco Antonio Vega-González ("Vega-González") a third-party. (Docket Nos. 133 at 4; 137 at 1). Mr. Vega-González was driving home from work as a supervisor in a data processing firm near the *locus in quo*. (Docket No. 136-1 at 13, 48-50). Plaintiffs Luis Álvarez-Cabrera ("Álvarez-Cabrera") and Sandra Pérez-Méndez ("Pérez-Méndez") are Ms. Álvarez-Pérez's parents (collectively with Álvarez-Pérez, "Plaintiffs"). (Docket No. 1 ¶ 180).

The Complaint against Toyota was filed on May 23, 2011 and sought to assert claims for negligence, strict products liability due to design defect, strict products liability for failure to warn, breach of implied warranties of merchantability, fraudulent

concealment and temerity. (Docket No. 1 at 48-51). On July 26, 2011, the case was transferred to multi-district litigation before the U.S. District Court for the Central District of California ("the MDL Court"). (Docket No. 4). The MDL Court reduced the issues in this case by limiting the scope of Plaintiffs' expert testimony and granting summary judgment dismissing all of Plaintiffs' claims save for the design defect claim. (Dockets Nos. 89 and 96). For his lack of qualifications in the field of automotive engineering, among other reasons, the MDL Court struck Plaintiffs' expert's opinions on design defect while allowing his testimony on accident reconstruction to stand. (Docket No. 89). The MDL Court also granted Defendants' summary judgment on Plaintiffs' claims for manufacturing defect and for negligent design. (Docket No. 96). The MDL Court allowed Defendants to withdraw their request for summary judgment on the claim for strict products liability for design defect because the claim "turns completely on issues of Puerto Rico law" and "it would be more efficient for a court overseeing the trial in Puerto Rico to determine whether there is a genuine dispute of material fact regarding Plaintiffs design defect claim sufficient to present the claim to a jury." Id. at 4.

The case was remanded to the District of Puerto Rico on January 1, 2018. (Docket No. 104). It was transferred to the undersigned on June 12, 2019. (Docket No. 127). On that same date, the Court granted Defendants' motion to file a renewed motion for

Civil No. 17-2305 (RAM)                                                    4

summary judgment. (Docket No. 128). Defendants filed the *Motion for Summary Judgment* ("Motion for Summary Judgment" or "MSJ") on July 10, 2019. (Docket No. 129). Plaintiffs opposed the MSJ on August 19, 2019. (Docket Nos. 133-136). Defendants filed a reply to the opposition on August 26, 2019. (Docket Nos. 138-139).

Defendants argue that they are entitled to judgment as a matter of law because Plaintiffs' sole remaining claim is for design defects, the consumer expectations test is inapplicable because this case involves complex technical matters, and Plaintiffs' expert's opinions on design defects were stricken by the MDL Court. (Docket No. 129 at 2-3). In response, Plaintiffs posit that the consumer expectations test is applicable and that they can prove their design defects case by circumstantial evidence of a malfunction. (Docket No. 133 at 14-15). The circumstantial evidence consists of Plaintiff's expert witness' accident reconstruction and Mr. Vega-González's fact witness testimony. Id. at 4. The Court **GRANTS** Defendants' MSJ for the following reasons.

First, Plaintiffs lack expert evidence that the 2004 Toyota Sequoia had a design defect and that it caused the accident.

Second, the consumer expectations test is inapplicable to this automobile products liability because the 2004 Toyota Sequioa's electronic brakes and throttle are complex products.

Third, the malfunction theory of liability is also inapplicable. Ms. Álvarez-Pérez cannot recollect the accident and

thus cannot testify that she used the vehicle in a reasonably foreseeable manner.

Further, the eyewitness testimony and the accident reconstruction are insufficient circumstantial evidence of a defect because they cannot fill the gap in Plaintiffs' evidence posed by Ms. Álvarez-Pérez's lack of recollection of her operation of the car. Lastly, the malfunction theory requires eliminating all probable causes of the accident other than a defect and Plaintiffs cannot do so in this case.

## II.   APPLICABLE LAW

### A. Standard for summary judgment under Fed. R. Civ. P. 56(a).

Summary judgment is proper under Fed. R. Civ. P. 56(a) if a movant shows "no genuine dispute as to any material fact" and that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence "is such that a reasonable jury could resolve the point in the [non-movant's] favor." Mercado-Reyes v. City of Angels, Inc., 320 F. Supp. 3d 344, 347 (D.P.R. 2018) (quotation omitted). A fact is material if "it is relevant to the resolution of a controlling legal issue raised by the motion for summary judgment." Bautista Cayman Asset Co. v. Terra II MC & P, Inc., 2020 WL 118592, at *6 (D.P.R. 2020) (quotation omitted).

The movant "bears the burden of showing the absence of a genuine issue of material fact." United States Dep't of Agric. v.

Morales-Quinones, 2020 WL 1126165, at *1 (D.P.R. 2020) (citing
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Next, the
burden shifts to the non-movant to present at least one issue of
fact which is genuine **and** material. Id. (quotation omitted). A
non-movant must do this "through submissions of evidentiary
quality," showing "that a trialworthy issue persists." Robinson v.
Town of Marshfield, 950 F.3d 21, 24 (1st Cir. 2020) (quotation
omitted). Thus, while a court will draw all inferences in favor of
the non-movant, summary judgment may be proper if their case solely
relies on improbable inferences, conclusory allegations and
unsupported speculation. *See* Burke Rozzetti v. Ford Motor Co.,
2020 WL 704860, at *3 (D.P.R. 2020) (quotation omitted).

It is well settled that "'[t]he mere existence of a scintilla
of evidence in support of the plaintiff's position' is not enough
to ward off summary judgment." Irobe v. United States Department
of Agriculture, 890 F.3d 371, 380 (2018) (quoting Anderson v.
Liberty Lobby, 477 U.S. 242, 252 (1986)). The non-movant "'must,
with respect to each issue on which [it] would bear the burden of
proof at trial, demonstrate that a trier of fact could reasonably
resolve that issue in [its] favor.'" Id. at 377 (quoting Borges ex
rel. S.B.M.W. v. Serrano-Insern, 605 F.3d 1, 5 (1st Cir. 2010)).
"Put another way, summary judgment is warranted if a non-movant
who bears the burden of proof on a dispositive issue fails to

Civil No. 17-2305 (RAM)                                    7

identify 'significantly probative' evidence favoring his
position." Id. (citing Anderson, 477 U.S. at 249-250).

     Local Rule 56 also governs summary judgment. See L. Civ. R.
56. Per this Rule, a non-movant must "admit, deny or qualify the
facts supporting the motion for summary judgment by reference to
each numbered paragraph of the moving party's statement of material
facts." Id. Moreover, "unless a fact is admitted, the reply shall
support each denial or qualification by a record citation." Id.
Local rules such as Rule 56, are "designed to function as a means
of 'focusing a district court's attention on what is and what is
not-genuinely controverted.'" Marcano-Martinez v. Cooperativa de
Seguros Multiples de Puerto Rico, 2020 WL 603926, at *2 (D.P.R.
2020) (quotation omitted). Hence, "litigants ignore Local Rule 56
at their peril." Calderón Amézquita v. Vicens, 2019 WL 3928703, at
*1 (D.P.R. 2019) (citation omitted).

**B. Strict products liability claims under Puerto Rico law.**

     The Puerto Rico Supreme Court has adopted the following strict
products liability doctrine articulated by the California Supreme
Court in Greenman v. Yuba Power Products, Inc.:

> 'A manufacturer is strictly liable in tort
> when an article he places on the market,
> knowing that it is to be used without
> inspection for defects, proves to have a
> defect that causes injury to a human being'
> and that 'liability is not one governed by the
> law of contract warranties but by the law of
> strict liability in tort.'

Civil No. 17-2305 (RAM)                                          8

González-Cabán v. JR Seafood, 132 F. Supp. 3d 274, 279 (D.P.R. 2016) (quoting Rivera-Santana et al. v. Superior Pkg., Inc., 132 P.R. Dec. 115, 126, Offic. Trans. Slip. Op. at 2 (1992)). *See also* Greenman v. Yuba Power Products, Inc., 377 P.2d 897, 900-901 (Cal. 1962). Nevertheless, "the manufacturer […] is not the insurer of every damage his products may cause." Quintana-Ruiz v. Hyundai Motor Corp., 303 F.3d 62, 71 (1st Cir. 2002) (quotation omitted).

To establish a products liability, claim under Puerto Rico law, a plaintiff must show that:

> (1) [Defendant's] equipment has a defect, in any of its modalities; (2) the defect existed when the product left [Defendant's] control; (3) [Defendant] is in the business of selling this type of product; (4) the defect was the adequate cause of [Plaintiff's injuries]; and (5) [Plaintiff] use[d] the product in a manner that was reasonable and foreseeable by [Defendant].

Santos-Rodríguez v. Seastar Solutions, 858 F.3d 695, 698 (2017) (quoting Rodríguez-Méndez v. Laser Eye Surgery Mgmt. of P.R., Inc., 195 P.R. Dec. 769 (2016)).

The Puerto Rico Supreme Court has "recognized three types of defects that trigger the application of the strict liability doctrine: (1) manufacturing defects; (2) design defects, and (3) defects for insufficiency of warnings or instructions ["failure to warn"]." González-Cabán v. JR Seafood, 199 P.R. Dec. 234, 241, P.R. Offic. Trans. Op. Slip. at 3 (2017); Pérez-Trujillo v. Volvo Car Corp. (Sweden), 137 F.3d 50, 53 (1st Cir. 1998). The Court

will not expound on the requirements of claims for manufacturing defects and for failure to warn because Plaintiffs' sole remaining claim is for design defect.

To prove design defects, two tests are potentially available "depending on the nature of the product." Carballo-Rodriguez v. Clark Equipment Co., Inc., 147 F.Supp.2d 66, 71 (2001). The first test is the consumer expectations test. It requires a plaintiff to show that "the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." Betancourt Ruiz v. Toyota Motor Corp., 2007 WL 9760418, at *1 (D.P.R. 2007) (citing Rivera Santana et al. v. Superior Pkg., Inc., 132 P.R. Dec. 115, 129, Offic. Trans. Slip. Op. at 3 (1992)). The consumer expectations test "cannot be the basis of liability in cases involving complex technical matters." Quintana-Ruiz, 303 F.3d at 77 (consumer expectations test not applicable to case involving an airbag); see also Fremaint v. Ford Motor Co., 258 F.Supp. 2d 24, 30 (D.P.R. 2003). The District of Puerto Rico has even applied this rule in a case involving such a seemingly simple product as an aircraft overhead bin. See Silva v. American Airlines, Inc., 960 F. Supp. 528, 533 (D.P.R. 1997).

The second test to prove a design defect is the risk/utility test which requires plaintiff to prove that the product's design proximately caused his injuries. See Collazo Santiago v. Toyota, 149 F.3d 23, 26 (1st Cir. 1998) (quotation omitted). If the

Civil No. 17-2305 (RAM)                                              10

plaintiff proves that "the product's design is the proximate cause of the damage," the burden shifts to the defendant to prove that "the benefits of the design at issue outweigh the risk of danger inherent in such a design." Quintana Ruiz, 303 F.3d at 69 (quotation omitted). "The risk-utility balancing test is designed to avoid converting the manufacturer into the insurer of every harm that arises out of a product from which the consumer derives utility." Id. at 71.

Lastly, a lack of expert evidence need not be fatal at the summary judgment stage in a products liability case. Per First Circuit jurisprudence, "a strict liability claimant may demonstrate an unsafe defect through direct eyewitness observation of a product malfunction, and need not adduce expert testimony to overcome a motion for summary judgment." Pérez-Trujillo, 137 F.3d at 55. This means that **"'[s]trict liability claimants may resort to an array of circumstantial evidence,'** including direct observations regarding the malfunction of a product." Velazquez v. Abbott Labs., 901 F. Supp. 2d 279, 293 (D.P.R. 2012) (quoting Pérez-Trujillo, 137 F.3d at 55) (emphasis ours). Or they may choose to rely on other evidence, "such as similar accidents involving the same product, elimination of other possible causes of the accident, and proof tending to establish that the accident does not occur absent a manufacturing defect." Id. The need for expert evidence thus depends on whether "the question is one of common

Civil No. 17-2305 (RAM)                                              11

knowledge such that lay people could 'reach the conclusion as intelligently as the witness.'" Id. (quoting Collazo-Santiago v. Toyota Motor Corp., 937 F.Supp. 134, 140 (D.P.R. 1996), aff'd, 149 F.3d 23 (1st Cir. 1998)).

### III. FINDINGS OF FACT

Based on the parties' submissions and evidentiary materials at Docket Nos. 129, 135-136 and 138, and viewing the facts in the light most favorable to Plaintiffs, the Court enters the following findings of uncontroverted material facts:[1]

1. On May 27, 2010, the day of the accident, plaintiff Álvarez-Pérez was driving her 2004 Toyota Sequoia northbound on Road 176 in San Juan, Puerto Rico. (Docket No. 129-2 at ¶¶ 1-2).

2. Ms. Álvarez-Pérez has no memory of the accident. Id. ¶ 4.

3. Plaintiff Álvarez-Cabrera purchased a new Toyota Sequoia in 2004. Id. ¶ 9.

4. Mr. Álvarez-Cabrera never experienced any issues with the electronics, brakes, steering, accelerator pedal, ignition, cruise control, or floor mats of the Toyota Sequoia. Id. ¶ 10.

5. Mr. Álvarez-Cabrera never experienced unintended acceleration while operating the Toyota Sequoia nor did anyone ever report experiencing such an event in the vehicle to him. Id. ¶ 12.

---

[1] References to a specific Finding of Fact shall be cited in the following manner: (Fact ¶ _).

Civil No. 17-2305 (RAM)                                                    12

6. Ms. Álvarez-Pérez never experienced any unintended acceleration in the 2004 Toyota Sequoia prior to the May 27, 2010 accident. Id. ¶ 13.

7. In Ms. Álvarez-Pérez's experience with the Toyota Sequoia prior to the May 27, 2010 crash, the brakes and accelerator pedal in the car always functioned properly. Id. ¶ 14.

8. Ms. Álvarez-Pérez never experienced any issues with the electrical system, ignition, steering, brakes, acceleration system, or floor mats of the 2004 Toyota Sequoia. Id. ¶ 15.

9. Plaintiff Pérez-Méndez never experienced any issues on the occasions she drove the Toyota Sequoia. Id. ¶ 17.

10. At around 12:55 a.m., Ms. Álvarez-Pérez had stopped at the intersection of Rhin Street with the main state road, at a red light. She was on the left lane of the four lane PR-176 state road, with a roadway section of two lanes per traffic direction. (Docket No. 134 at ¶ 1).

11. Mr. Vega-González, the sole eyewitness to the collision, arrived at the stop light and stopped, side by side, to the right of the Toyota Sequoia already at the light. Id. at ¶ 2.

12. The road was dry and there was no rain. Id. ¶ 3.

13. Mr. Vega-Gonzalez's car windows were down. Id. ¶ 4.

14. He looked to the left and saw Ms. Álvarez-Pérez talking on her cell-phone. Id. ¶ 5.

Civil No. 17-2305 (RAM)                                                        13

15. Mr. Vega-González departed first from the stop light. Ms. Álvarez-Pérez remained stopped at the light. Id. ¶ 27.

16. About two lights down, Mr. Vega-González was going to make a left turn to go to his house and he switched to the left lane to take PR State Road 1. (Docket No. 136-1 at 48-49).

17. He was traveling at about 35-40 miles an hour. Id. at 50-51.

18. After about 20 seconds, he heard the noise of a car accelerating and coming in his direction.  Id. at 53.

19. Mr. Vega-González moved to the right lane to get out of the way of the oncoming car. Id. at 54.

20. The Toyota Sequoia passed him, invaded the oncoming lane so as not to hit him and it kept going, with the same noise, as if it were accelerated. Id. at 55.

21. Mr. Vega-González could see Ms. Álvarez-Pérez was braking because he could see the brake lights flashing. Id. at 57-58.

22. Per his testimony, the lights went on and off about three times. Id. at 59-60.

23. Per Mr. Vega-González's testimony, the Toyota Sequoia was reducing speed but it would not stop accelerating. Id. at 60.

24. Mr. Vega-González accelerated his car to follow Plaintiff's car. (Docket No. 136-1 at 60; Docket No. 134 ¶ 31).

25. Ms. Álvarez-Pérez lost control of the Toyota Sequoia after she avoided hitting Mr. Vega-González. Id. at 60-61.

Civil No. 17-2305 (RAM)                                                    14

26. The Toyota Sequoia then climbed on a sidewalk, hit a sign and
    some planters and left the side walk. It climbed the sidewalk
    again and hit a wooden pole. It came to a stop when it hit a
    concrete pole next to the wooden pole. Id. at 61.

27. Plaintiffs' only expert designated to offer design defect
    opinions is Mr. Otto R. González-Blanco ("González-Blanco").
    (Docket No. 129-2 ¶ 18).

28. The MDL Court excluded Mr. González-Blanco's opinion that the
    accident was caused by unintended acceleration resulting from
    electric failures ("the causation opinion"). (Docket 89 at 5;
    Docket No. 129 ¶ 19).

29. The MDL Court excluded the causation opinion because it found
    that Mr. González-Blanco was unqualified to render it because
    "he lacks the basic credentials to express any opinion with
    regard to the malfunctioning of the vehicle. He is not qualified
    to express an opinions [sic.] about the electronics of the car
    or the functioning of the brake pedal." (Docket No. 89 at 5).

30. The MDL Court also excluded Mr. Gonzalez-Blanco's causation
    opinion because of his lack of an independent opinion, that "the
    trajectory showed continuous acceleration does not support the
    separate question of causation," and because of his reliance on
    a report of the National Aeronautics and Space Administration
    ("NASA") which was inconclusive and could not replicate
    unintended acceleration related to the Toyota vehicles'

Civil No. 17-2305 (RAM)                                              15

electronic systems. Thus, "his reliance on the NASA report does
not save his causation opinion." <u>Id.</u>

31. The MDL Court also excluded Mr. González-Blanco's causation
opinion because it was not reliable since he "**could not testify
to a 'reasonable degree of certain or probability' that a specific
vehicle malfunction caused to the crash. […] He could not attach
a 'degree' of certainty to his malfunction opinion.**" (Emphasis
added). <u>Id.</u>[2]

32. The MDL Court did not exclude Mr. González-Blanco's reconstruction
of the accident. <u>Id.</u> at 4.

33. Mr. González-Blanco's reconstruction of the accident states:

> The accident occurred at approximately 12:55 a.m. The
> ***unintended acceleration (UA)*** originated after departing
> the stop light at Rhin Street, intersection with state
> road PR-176, within the next 800 ft. towards UMET
> University. Mr. Marco A. Vega Gonzalez, only witness,
> driving ahead in his Toyota FJ Cruiser, driving at ± 40
> mph, before changing lanes due to "fast" approach of the
> Plaintiff's vehicle to his rear. The Toyota Sequoia-
> 2004, driven by Miss Alvarez Perez became ***accelerated***
> thru an initial path of ± 800.00 ft., approximately
> within ±460 ft. to an estimated speed of ±61 mph. The
> accident originates with the above acceleration
> condition, diverting in several impact events in the
> following sequence and maintained speeds (*Toyota Sequoia
> brakes did not override the acceleration condition*) :
> ***Impact -1*** with curb-into-sidewalk on interior right lane
> in front of UMET University grounds, at a speed of ±58
> mph; ***impact-2*** with several (2) ornamental concrete pots
> along the above mentioned sidewalk, at a sustained speed

---

[2] The MDL Court also excluded González-Blanco's opinion regarding "the effects
of alcohol or cannabis on Tatiana's [Ms. Álvarez-Pérez] ability to drive and
control the vehicle of the evening of the accident." (Docket No. 89 at 5-6).
Given the insufficiency of Plaintiffs' evidence to create a trial-worthy issue
that the car had a design defect, neither Toyota's evidence suggesting Ms.
Álvarez-Pérez was intoxicated nor Plaintiffs' opposing evidence are material.

Civil No. 17-2305 (RAM)                                                16

of ±58 mph; **impact-3** with the last pot at a sustained
speed of ±58 mph; **impact-4** with a high 12 ¼" curb,
redirecting the steering of the vehicle to the left into
the road interior lane at a sustained speed of 58 mph;
**impact-5** redirected vehicle by Plaintiff to the right
into the curb of the continuous sidewalk at a sustained
speed of ±57.5 mph; **impact-6** the front of the Toyota
Sequoia into a three steel posts of road signs at a
sustained speed of ±58 mph; **impact-7** vehicle slides
sideways to the left (drivers side) into a creosote wood
utility pole, shearing the pole at the base at sustained
speed of ±52 mph and stopping on the same side (drivers
door), carrying the prior wood pole on the vehicle roof,
**final impact-7** stopping with a second self support
concrete pole. During impacts 4 thru 6, the front and
rear tires & rims were severely damage. (Docket 135-1 at
6).

## IV.   DISCUSSION

Plaintiffs lack expert evidence that a design-defect existed

and that it caused the accident. (Facts ¶¶ 27-28). The MDL Court

found that Mr. González-Blanco was not qualified to render an

opinion "about the electronics of the car or the functioning of

the brake pedal." (Fact ¶ 29). Further, as noted by another Judge

in this District, Mr. González-Blanco does not have expertise or

formal education in "automotive design, engineering or electronics

and has not been recognized by any court as expert in these areas."

*See* Hernandez-Denizac v. Kia Motors Corporation, 323 F. Supp. 3d

277, 285 (D.P.R. 2018). To wit, the Hernandez-Denizac Court also

stated that González-Blanco is "not an expert with respect to

anything related to automotive manufacturing or design." Id. Thus,

Plaintiffs herein sought to establish a *prima facie* case of design

Civil No. 17-2305 (RAM)                                                17

defect products liability claim through the consumer expectations test and the malfunction theory of liability.

The consumer expectations test, however, is inapplicable to this automobile products liability case. As noted earlier, the test "cannot be the basis of liability in cases involving complex technical matters." Quintana-Ruiz, 303 F.3d at 77. It is "reserved for cases in which the everyday experience of the product's users permits a conclusion that the product's design violated *minimum* safety assumptions, and is thus defective *regardless* of expert opinion about the merits of the design." Collazo-Santiago v. Toyota Motor Corp., 937 F.Supp. 134, 139 (D.P.R. 1996), aff'd, 149 F.3d 23 (1st Cir. 1998). Further, while some products liability cases which rely on the consumer expectations test do not need expert testimony to prove causation, in cases such as the one at bar which involve complex technical matters, the First Circuit has held that "[a] jury in such a case must rely on expert testimony and cannot substitute its own experience." Quintana-Ruiz, 303 F.3d at 77. This because "the ordinary consumer of an automobile simply has 'no idea' how it should perform in all foreseeable situations, or how safe it should be made against all foreseeable hazards." Id. (quotation omitted).[3] *See also*, Amica Mut. Ins. Co. v. WHAC LLC,

---

[3] In contrast, the California Supreme Court stated that what may be reasonably expected from motor vehicles, and therefore where the consumer expectations test is applicable, include "that such vehicles will be designed so as not to explode while idling at stoplights, experience sudden steering or brake failure as they leave the dealership, or roll over and catch fire in two-mile-per-hour

2020 WL 1316493, at *2 (W.D.N.Y. 2020) ("[I]t is undisputed that motor vehicle design is a complex field, and the myriad factors affecting placement of various automobile components – including electrical conductors and connection points – are not readily understood by laypeople.")

Thus, it comes as no surprise that the First Circuit and other judges sitting in this district have declined to apply the consumer expectations test in cases involving the design of automobile airbags, automobiles and seat belts. *See* Quintana-Ruiz, 303 F.3d at 79; Fremaint, 258 F.Supp. 2d at 30 (finding that the consumer expectations test was not applicable to case involving tire failure and questioning the safety of the design of a Sport Utility Vehicle and its seatbelt). In the case at bar, there is no proof, expert or otherwise, as to what the *minimum* ordinary consumer expectations for the throttle and braking systems of a sport utility vehicle comparable to the 2004 Toyota Sequoia. Hence, there is no reason on the record why the 2004 Toyota Sequoia's throttle and braking systems should be an exception which warrants application of the consumer expectations test.

The malfunction theory of liability is also inapplicable to the present case. The 2004 Toyota Sequoia was approximately six

---

collisions." Fremaint, 258 F. Supp. at 30 (quoting Soule v. Gen. Motors Corp., 8 Cal.4th 548, 34 Cal.Rptr.2d 607, 882 P.2d 298, 308 n. 3 (1994)). These examples are extreme events which bear no resemblance to the accident at issue here.

Civil No. 17-2305 (RAM)                                                  19

(6) years old before the accident in May 27, 2010. (Facts ¶¶ 3,
6). Further, no issues with the electronics, brakes, steering,
accelerator pedal, ignition, cruise control, or floor mats of the
2004 Toyota Sequoia were reported by any of its drivers, that is
the Plaintiffs. (Facts ¶¶ 4-9). More importantly, Ms. Alvarez-
Pérez cannot recollect the accident and thus cannot testify that
she used the vehicle in a reasonably foreseeable manner, which is
part of her burden of proof. (Fact ¶ 2).

        The _Hernandez-Denizac_ case is instructive. _See_ _Hernandez-
Denizac_, 323 F. Supp. at 285 n. 4 (quotation omitted). Said case
held that the case was not "a situation where 'direct eyewitness
observation of a product malfunction' renders expert testimony
unnecessary" when the only person who could provide eyewitness
testimony of what occurred during the accident was the plaintiff
who had no recollection of anything that happened just before or
during the crash. _Id._ The District of Puerto Rico also stated
therein that plaintiffs' manufacturing defect claim could not
survive summary judgment given that plaintiffs "failed to 'present
evidence that [Defendant's] design of the [airbag] was defective,'
and rel[ied] instead on the fact that the airbag did not deploy to
serve as indication that a defect existed in the design or
manufacture." _Id._ at 285. A similar situation occurred in the
instant case because Plaintiffs failed to present evidence that a
manufacturing defect led to the failure of the break. Instead they

relied on the fact that the brakes supposedly failed to claim that said failure was due to a design defect. *Cf*. Tweedy v. Wright Ford Sales, Inc., 64 Ill. 2d 570, 574-75, 357 N.E.2d 449, 452 (1976) (holding that design defect on the automobile's brake which caused it to fail was evident and did not necessitate expert testimony because plaintiff showed that he used the brake in a reasonable manner and there was no evidence of any reasonable secondary cause). Here, unlike Tweedy, Plaintiff Álvarez-Pérez cannot demonstrate that she was driving in a reasonable manner nor can she prove that there are no secondary causes other than the design defect for the accident. This leaves Plaintiffs with Mr. Vega-González's eyewitness testimony and Mr. González-Blanco's accident reconstruction to attempt to make a *prima facie* case of a defect.

Viewed in the light most favorable to Plaintiffs, Mr. Vega-González's testimony is that he saw the 2004 Toyota Sequoia's brake lights go on and off several times, but the Toyota Sequoia continued to accelerate forward, albeit reducing in speed. (Facts ¶¶ 20-23). Mr. Vega-González's testimony supports an inference that Ms. Alvarez-Pérez pressed the brake pedal and the Toyota Sequoia did not stop. (Fact ¶ 20). But as Toyota correctly notes, Mr. Vega-González was in his car and not in the 2004 Toyota Sequoia driven by Ms. Alvarez-Pérez. (Docket No. 137 at 7). Thus, the Court agrees with Defendants that "even setting aside the limitations of an eyewitness who was operating a vehicle" while he was "observing

another vehicle [...] this 'circumstantial evidence' does not and cannot establish that there was a defect in the vehicle which caused the accident to occur." Id. Mr. Vega-González cannot "say what was going on inside the Sequoia at the time of the crash." Id. Therefore, his testimony does not rule out, for example, that Ms. Álvarez-Pérez may have mistakenly pressed the accelerator pedal as she pressed on the brake pedal.

Further, the malfunction theory of liability requires eliminating "all probable causes other than a defect, of the malfunction." Makuc v. American Honda Motor Co., Inc., 835 F.2d 389 (1st Cir. 1987).[4] Plaintiffs' repeated assertions that Ms. Álvarez-Pérez removed her foot from the accelerator pedal, **which they made despite the lack of evidence**, fail to eliminate other probable causes of the accident as required by the malfunction theory of liability. (Docket No. 133 at 15 and 16).

The instant case differs from other products liability cases where eyewitness observation was deemed sufficiently probative of a defect to survive summary judgment. For example, in Pérez-Trujillo v. Volvo Car Corp. (Sweden), the eyewitness testified

---

[4] In Makuc, the First Circuit explained that Massachusetts has adopted the principles set out in Restatement (Second) of Torts § 402A when it comes to breach of warranty actions. See Makuc, 385 F.2d at 392 (citation omitted). Under these, a plaintiff must show "that the product was in a defective condition when it left the defendant's possession." Id. at 393. Puerto Rico has also adopted these principles. See Malave-Felix v. Volvo Car Corp., 946 F.2d 967, 971 (1st Cir. 1991) ("A manufacturer is liable in tort on a theory of strict liability when it places a product on the market, knowing that it is to be used without inspection for defects, and it has a defect that causes injuries.")

that he saw the airbag was deployed and there was smoke in the car before a collision. *See* Pérez-Trujillo, 137 F.3d at 53. There, an eyewitness directly observed the product malfunction—an airbag deploying under normal driving conditions—and the First Circuit held that "direct observation of the malfunction itself is circumstantial evidence of a defective condition." Id. at 53-55. In Ortiz-Martinez v. Hyundai Motor Co., plaintiff also had evidence that the airbag deployed while the car was being parked at low speed. *See* Ortiz-Martinez v. Hyundai Motor Co., 602 F.Supp.2d 311, 314 (D.P.R. 2009).

Here, Vega-González's testimony is solely based on the fact that he saw the brake light turn on three times and the vehicle appeared to reduce its speed. (Facts ¶ 21-23). Yet, simply because Vega-González ***thought*** he saw Plaintiff Álvarez-Pérez's car braking, via the flashing lights, does not mean that Plaintiff ***was*** braking the vehicle and that a defect in the brakes prevented her from stopping the same or reducing her speed further. Again, Mr. Vega-González can proffer no testimony about what was going on inside the 2004 Toyota Sequoia driven by Ms. Álvarez-Pérez. In Santos-Rodríguez v. Seastar Solutions, the First Circuit found that although the plaintiffs showed that something was wrong, specifically that the rod end of the boat's steering mechanism failed, "the Plaintiffs did not present evidence that Seastar's design of the rod end was defective." Santos-Rodríguez, 858 F.3d

at 699. Furthermore, the <u>Santos-Rodríguez</u> Court held that "[t]his is precisely the type of showing rejected" by the Puerto Rico Supreme Court in <u>Rodríguez-Méndez v. Laser eye Surgery Mgmt. of P.R., Inc</u>. <u>Id.</u> In <u>Rodríguez-Méndez</u>, the plaintiff developed an eye issue after receiving laser eye surgery and then sued the manufacturer of the surgical equipment for allegedly selling a defective product. <u>See</u> <u>Rodríguez-Méndez v. Laser Eye Surgery Mgmt. of P.R., Inc.</u>, 195 P.R. Dec. 769, 774 (2016). However, the Puerto Rico Supreme Court determined that the plaintiff's reliance on the presence of metal particles in his eye, without more, was insufficient "to establish that [the surgical] equipment suffer[ed] from a manufacturing defect [or] was defectively designed." <u>Id.</u> at 790 (translation ours).

Likewise, Mr. González-Blanco's accident reconstruction is insufficient to create a trial worthy issue on malfunction. The MDL Court already ruled "**that the [fact that the] trajectory showed continuous acceleration does not support the separate question of causation**." (Docket 89 at 5). (emphasis added). Put in another way, the presence of continuous acceleration by itself **does not prove that a defect existed <u>and</u> that it caused the accident**.

### V.   CONCLUSION

Plaintiffs had the burden of making a *prima facie* showing that a design defect was the adequate cause of Ms. Álvarez-Pérez's accident. The evidence they proffered is insufficient. Plaintiffs

do not have an expert qualified to proffer testimony that the 2004 Toyota Sequoia had a design defect. Moreover, Ms. Álvarez-Pérez cannot testify that she was operating the 2004 Sequoia in a reasonably foreseeable manner because she has no recollection of the accident. The best Plaintiffs could do was try and establish such a defect with circumstantial evidence. Neither Mr. Vega-González's testimony that the brake lights went on and off as if the brakes were being applied, nor González-Blanco's accident reconstruction's showing of continuous acceleration suffice to establish that a design defect, rather than driver error, caused the accident. Thus, the Court **GRANTS** Defendants' *Motion for Summary Judgment*. (Docket No. 129). Judgment of dismissal **with prejudice** shall be entered accordingly.

    **IT IS SO ORDERED.**

    In San Juan, Puerto Rico this 2nd day of July 2020.

                                        S/ RAÚL M. ARIAS-MARXUACH
                                        United States District Judge